LAW OFFICE OF CYNTHIA V. ECUBE, ESQ. P.C.
*A Professional Corporation*
207 Martyr Street, Suite 3
Hagåtña, Guam 96910
Telephone: (671) 472-8889
Telecopier: (671) 472-8890
Email address: ecubelaw@netpci.com

RENEA D. CRUZ-TAITANO
*Attorney for Defendant*

FILED
DISTRICT COURT OF GUAM
OCT 14 2005
MARY L.M. MORAN
CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>RENEA D. CRUZ-TAITANO,<br><br>　　　　　Defendant. | Magistrate Case No. CR No. 05-00045<br><br>DEFENDANT CRUZ-TAITANO'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO SUPPRESS THE EVIDENCE AND STATEMENTS; CERTIFICATE OF SERVICE |

### A.　MEMORANDUM OF POINTS AND AUTHORITIES

#### I.　Statement of Relevant Facts

On September 8, 2005, at approximately 8:40 p.m., pursuant to a federal search warrant, Drug Enforcement Administration officers along with Guam law enforcement officers executed a search of the Guam Reef Hotel, Room 755, 1317 Pale San Vitores Road, Tumon, Guam.

At approximately 8:45 p.m., Defendants, **RENEA D. CRUZ-TAITANO** and **JUSTIN KIETH GUERRERO**, arrived by elevator at the seventh floor of the Guam Reef Hotel. Immediately upon the elevator doors opening, Defendants were seized by law enforcement officers and pushed up against a wall. A pat-down search of the person of each of the defendants was performed by law enforcement officers. Immediately after determining that defendants were not in possession of

weapons, law enforcement officers began to question defendants about the reason for their being on the seventh floor of the hotel. Law enforcement officers suspected that Defendants were in the area for drug related activities concerning room 755. The law enforcement officers began to question the Defendants about their reasons for being at the Guam Reef Hotel. Law enforcement officers then asked where defendants were going, to which Defendant Guerrero responded by giving a room number. Law enforcement officers moved Defendant Guerrero to another part of the hotel separated from co-defendant, **RENEA DORLEEN CRUZ-TAITANO,** and questioned Defendant Taitano. Defendant Taitano was told that she was not free to leave and was being physically held by law enforcement officers. After repeated questioning, law enforcement officers elicited inculpatory statements from Defendant Taitano. Law enforcement officers did not advise Defendant Taitano at that time of Defendant's U.S. Constitutional rights as required by U.S. v. Miranda, 384 U.S. 436, 458-69, 85 S. Ct. 1602, 16 L. Ed. 2d 694 (1966) until 12:11 a.m., on September 9, 2005.

### B. DISCUSSION OF LAW

#### I. ILLEGAL SEIZURE OF DEFENDANT'S PERSON.

The United States Constitution, Fourth Amendment, provides: "The right of the people to be secure in their houses, papers, and effects, against unreasonable searches and seizures, shall not be violated and no warrant shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized. See U.S. Constitution, Amendment IV.

#### II. Standing of Defendant RENEA D. CRUZ-TAITANO.

It is quite plain that the Fourth Amendment governs 'seizures' of the person, Terry v. Ohio, 392 U.S. 1, 16 (1968). Here the person seized about which Defendant **RENEA D. CRUZ-TAITANO** complains of is her person. Therefore, Defendant has standing to assert her rights under the Fourth Amendment relating to the illegal seizure of her person.

#### III. Initial seizure of Defendant RENEA D. CRUZ-TAITANO at the hotel elevators.

The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure . . . against unreasonable searches and seizures . . . [except] upon probable cause."

In this case, there was neither probable cause nor reasonable suspicion. As a result, the law enforment officers actions in regards to Ms. Taitano were not justified.

"[T]he general rule [is] that every arrest, and every seizure having the essential attributes of a formal arrest, is unreasonable unless it is supported by probable cause." Michigan v. Summers, 452 U.S. 692, 700 (1981). Probable cause is more than mere suspicion. "Probable cause exists when 'under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability' that a crime was committed. Gasho v. United States, 39 F.3d 1420, 1428, (9th Cir. 1994). Moreover, "[p]robable cause must exist from the facts and circumstances known to the officers *at the moment of arrest.*" United States v. Delgadill v. Velasquez, 856 F.2d 1292, 1298 (9th Cir. 1998) (emphasis in original).

Moreover, there must be reasonable suspicion to believe that Defendant Taitano had committed a crime. Before a police officer detains a suspect, he must have reasonable suspicion or "specific, articulable facts which, together with objective and reasonable inferences, for the basis for suspecting that the particular person detained is engaged in criminal activity." United States v. Garcia-Comancho, 53 F.2d 244, 245-46 (9th Cir. 1995. Mere subjective impressions are insufficient. United States v. Hernandez-Alvarado, 891 F2d 1414 1416 (9th Cir. 1989).

[A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest. Terry v. Ohio, 392 U.S. 1, 22 (1968). In Terry, we held that an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable suspicion that criminal activity is a foot.

While reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop . . . The officer must be able to articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity. Illinois v. Wardlaw, 528 U.S. 119, 123-124 (2000). The Fourth Amendment permits limited investigatory stops where there is some reasonable, articulable and objective manifestation that the person seized

is, or is about to be, engaged in criminal activities . . . In order to determine if reasonable suspicion existed to justify an investigatory stop, the court must consider the facts available to the officer at the moment of the seizure. U.S. v. Smith, 217 F.3d 746, 749 (9th Cir. 2000). [R]easonable suspicion must not be based on broad profiles which cast suspicion on entire categories of people . . . The rationale upon which the reasonable suspicion doctrine is based, a doctrine that thwarts the notion of liberty and freedom from state intrusion in a mobile society, must be founded on an objective basis for suspecting that a particular person is engaged in criminal activity, lest we sweep many ordinary citizens into a generality of suspicious appearance merely on hunch. . . . Reasonable suspicion can not rest upon the hunch of an experienced officer, even if the hunch turns out right. The requirement of objective fact to support an inference of wrongdoing eliminates the need to deal with a policy stop that rests on constitutional intuition." U.S. v. Jimenez-Medina, 173 F.3d 752, 756 (9th Cir. 1999).

In this case, the police immediately grabbed Defendant **RENEA D. CRUZ-TAITANO** and her co-defendant, **JUSTIN GUERRERO**, as the doors to the elevator of the seventh floor of the Guam Reef Hotel opened. Law Enforcement officers immediately pushed these persons up against a wall and began searching their persons. No particularized suspicion of criminal activity by these defendants could have been formed by the officers seizing the defendants. While dishonest in substance, Officer Cho reports;

> At approximately 8:45 p.m., a couple, later identified as Justin Keith **GUERRERO** and Renea Dorleen **CRUZ-TAITANO**, was observed exiting the elevator on the 7th floor and walk towards Room 755. At this time, LOVE (one of the persons seized in the room of the hotel which was being used as a drug lab) who was sitting in a chair by the elevator saw **GUERRERO** and **CRUZ-TAITANO** and turned her face immediately to the other way by lowering her body as if she was trying to hide from them. Officers asked LOVE if she knew **GUERRERO** and **CRUZ-TAITANO**. LOVE replied "no". Based on LOVE's unusual body language and reaction towards **GUERRERO** and **CRUZ-TAITANO**, Officers approached and identified themselves to **GUERRERO** and **CRUZ-TAITANO** as police officers. Officers then told

GUERRERO and CRUZ-TAITANO that there was ongoing narcotics investigation and what room they were going as Officers were escorting them away from the methamphetamine lab for their own safety. GUERRERO and CRUZ-TAITANO were not able to give answer and appeared to be very nervous.

Assuming arguendo, that the seizure was based on these articulable facts, (1) **LOVE** turned her face away from Defendants, (2) **LOVE** appeared to be hiding from Defendants, (3) **LOVE** said she did not know Defendants, and (4) after being seized by police and escorted away from the location that they were heading and being told that the reason was because a drug lab was found and the removal was for their safety, defendants appeared very nervous.

Given these facts, it rises to no more than a hunch of possible criminal activity by Defendants. Most people arrested by police lower and hide their faces out of the embarrassment of being arrested. If someone sought to warn another of their arrest, it is more reasonable to assume that the person would demonstratively make themselves known to the unsuspecting other person. Police could no more determine whether **LOVE** was lying when she said "no," then whether she was telling the truth. Further, it is completely reasonable that a person being informed that they are in a dangerous location and escorted away by police would be very nervous, fearful for their personal safety. There simply was nothing more than a hunch of criminal activity giving rise to the seizure of the Defendants based on these assumed and untruthful facts.

The true facts disclose a more egregious unlawful seizure. The Defendants arrived at the 7th Floor of the Guam Reef Hotel in an elevator stopping at that floor. They were immediately seized by police, pushed up against a wall, frisked and then interrogated. The mere arrival at the 7th Floor cannot arise to reasonable suspicion of criminal activity involving the defendants in the mind of a reasonably prudent person

III. **RENEA D. CRUZ-TAITANO'S STATEMENTS AND EVIDENCE MUST BE SUPPRESSED AS THEY WERE TAKEN IN VIOLATION OF HER MIRANDA RIGHTS AND WERE INVOLUNTARILY OBTAINED.**

The government has provided investigation reports which state there exists a number of oral,

recorded and written statements and conversations that allegedly took place between agents of the government and after his arrest.

Defendant, **RENEA D. CRUZ-TAITANO**, seeks suppression of the statements he was alleged to have made after her arrest on the basis that any alleged statements were obtained in violation of <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966) and the 5th and 6th Amendments to the United States Constitution. In addition, Defendnat, **RENEA D. CRUZ-TAITANO,** asserts that said statements were not the result of a knowing, intelligent and voluntary waiver of her right to remain silent and her right to counsel.

It is well settled in the law that the Fifth Amendment to the United States Constitution, made applicable to Guam through the Organic Act of Guam, bars the use of statements made by a defendant in violation of the Supreme Court's ruling in <u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966).

Additionally, pursuant to the authority of <u>Miranda</u> and its progeny, the Government bears the burden of establishing that a suspect has knowingly, voluntarily and intelligently waived his <u>Miranda</u> rights; and that any statements made by the suspect were not otherwise coerced, involuntary or barred by the Constitution. (See, e.g. <u>People v. Jimenez</u>, 21 Cal.3d 595 (1978).

The facts asserted in the police report of Officer Cho evidence that the defendants were restricted of movement by police and not free to leave. *See* <u>Thompson v. Keohane</u>, 516 U.S. 99, 112, S. Ct. 457, 133 L. Ed. 2d 383 (1995). Custody determination for *Miranda* purposes requires two discrete inquires, first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not a liberty to terminate the interrogation and leave. Once the scene is set and the player's lines and actions are reconstructed, the court must apply an objective test to resolve the ultimate inquiry: was there a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.

In this case, defendants were seized forcibly from the elevator, shoved up against a wall, frisked and required to move from place to place by police within the 7th Floor of the hotel, all the while being subjected to questioning designed to elicit information of criminal activity. "By custodial

interrogation, we mean questioning initialed by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. *Miranda, supra*, at 444.

Interrogation has been defined within the Ninth Circuit as: "Under all of the circumstances involved in a given case, the questions are reasonably likely to elicit an incriminating response from the suspect. U.S. v. Solano-Godines, 120 F.3d 957, 961 (9th Cir. 1997). Direct questioning by a police officer that leads an accused to make inculpatory statements is the most obvious form of impermissible interrogation, but not all direct questions constitute interrogation. As this court has explained, a definition of interrogation that included any questions posed by a police officer would be broader than that required to implement the policy of *Miranda* itself . . . only questions reasonable likely to elicit an incriminating response from the subject amount to interrogation. U.S. v. Foster, 227 F.3d 1096, 1102-03, (9th Cir. 2000).

After having been questioned about Defendant Taitano's knowledge of about Room 755, Defendant Taitano denied any involvement of Room 755. Defendant was later questioned about whether the contents of what was in the small black pouch that was inside her bag. Defendant stated that Defendant **GUERRERO** asked her to hold it because they had to return it to a friend. Both Defendants had no knowledge of the contents in the small black pouch and were simply returning the pouch to Ms. LOVE since she had left in the Defendant's vehicle. When asked by the police what was inside the small black pouch, Defendant Taitano stated that she thought she felt something like a glass pipe.

IV.     **Suppression of Evidence Based Upon Illegal Arrest of Defendant Taitano**

Under the Fourth Amendment of the Constitution, if an arrest is deemed to be illegal, then any statements or evidence taken must be suppressed under the "fruit of the poisonous tree doctrine". See Wong Sun v. U. S., 371 U. S. 471, 487-88 (1963). In this case, once Defendant Taitano was unlawfully seized upon the doors opening of the elevator, the two parties were briefly questioned and then separated. At the time, Defendant Taitano had on her person her purse. For purposes of conducting a protective search, the police removed Defendant Taitano's purse. They opened

Defendant's purse and saw a smaller black pouch that was closed within Defendant's purse. Upon initial viewing of the purse, there was nothing to indicate that there was any weapons during the police's protective search. The police then took the purse away from Defendant's plain view and brought Defendant's purse to another location for further examination. Defendant Taitano then stated that the purse was returned to her several hours later opened exposing all items in the large purse and smaller black pouch, which contained the glass pipe and ice paraphanelia items. Clearly, all evidence seized was a result of an unlawful and illegal search, and which exceeded the scope of the police officers' protective search, and therefore should be suppressed in light of the "Fruit of the poisonous tree" doctrine.

## CONCLUSION

For the above-stated reasons stated above hereinbefore, the Court should suppress the statements of Defendant and all evidence unlawful seized in this case of Defendant **GUERRERO** and Defendant **CRUZ-TAITANO**.

DATED this 14th day of October, 2005.

LAW OFFICE OF CYNTHIA V. ECUBE, ESQ.
A Professional Corporation

By: _____
CYNTHIA V. ECUBE, ESQ.
Attorney for Defendant
RENEA D. CRUZ-TAITANO

## REQUEST FOR EVIDENTIARY HEARING

An evidentiary hearing is requested by Defendant.

DATED this 14th day of October, 2005.

LAW OFFICE OF CYNTHIA V. ECUBE, ESQ.
A Professional Corporation

By: _____
CYNTHIA V. ECUBE, ESQ.
Attorney for Defendant
RENEA D. CRUZ-TAITANO

## CERTIFICATE OF SERVICE

I, GENEVIEVE P. MESA, Legal Secretary, working in the Law Office of Cynthia V. Ecube, Esq., P.C., hereby certify that on the 9th day of September, 2005, I caused to be served by facsimile and personal service a copy of the "Motion For Reconsideration for Appointment Of Non-Legal Assistance Pursuant to 18 U.S.C. §3006A(e) in Magistrate Case No. : **05-00042**.

**MARIVIC P. DAVID, Esq.**
Assistant U. S. Attorney
U. S. Attorney's Office
Sirena Plaza, Suite 500
108 Hernan Cortez Avenue
Hagatna, Guam 96910
(671) 472-7334

_____
Legal Secretary