FILED
DISTRICT COURT OF GUAM
NOV - 7 2005
MARY L.M. MORAN
CLERK OF COURT

LEONARDO M. RAPADAS
United States Attorney
MARIVIC P. DAVID
Assistant U.S. Attorney
Suite 500, Sirena Plaza
108 Hernan Cortez Avenue
Hagåtña, Guam 96910
Telephone: (671) 472-7332
Telecopier: (671) 472-7334

Attorneys for United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Magistrate ~~CRIMINAL~~ CASE NO. 05-00045 |
| Plaintiff, ) | |
| ) | GOVERNMENT'S OPPOSITION |
| vs. ) | TO DEFENDANTS GUERRERO'S |
| ) | AND CRUZ-TAITANO'S |
| ) | MOTIONS TO SUPPRESS |
| JUSTIN KEITH GUERRERO, and ) | |
| RENEA DORLEEN CRUZ-TAITANO, ) | |
| ) | |
| Defendants. ) | |

A. Introduction

On the evening of September 8, 2005, law enforcement agents were searching Room 755 of the Reef Hotel. Room 755 is the left room closest to the elevator when a person walks out of the elevator and towards the hallway where Room 755 is located. While the search of Room 755 was ongoing, other officers encountered the defendants Justin K. Guerrero and Renea D. Cruz-Taitano walk out of the elevator in the 7th floor of the hotel. They were heading towards the hallway where Room 755 was located. The officers recognized the defendants as the couple who entered the hotel before the search of Room 755 was conducted and walk away from them. At that time law enforcement agents Barbara Tayama, Erwin Fejeran and John Duenas were with

Shardae Love in the hotel lobby. In response to questioning, Love stated she did not know the couple.

For their safety and the safety of the officers, the defendants were stopped and questioned. U.S. Immigration and Customs Enforcement Agent John Duenas asked Guerrero where he was heading, and he replied Room 756 to visit his friend Joe Guerrero. Agent Duenas accompanied Guerrero to his friend's room and Guerrero stopped at the door leading to Room 754, which was next door to Room 755. When Duenas pointed out that Guerrero previously stated that his friend was in Room 756, and he stopped in front of Room 754, Guerrero became upset and stated he was only there to check a friend and does not know anything about drugs. In fact, Room 756 was located on the opposite direction of the hallway and away from Room 755.

Around the same time, Task Force Agent Barbara Tayama questioned Taitano on the opposite hallway. Tayama explained that there was an ongoing investigation and asked Taitano if she had any weapons or narcotics. Taitano stated "no." When Tayama explained that she would conduct a pat down and provided instructions on the manner of the pat down, Taitano stated she had "something" and pointed to her black bag. Tayama asked her what the "something" was and Taitano said it was a pipe. Tayama asked her where the pipe was located and Taitano unzipped her bag and pointed the ice pipe out to the officer. Taitano stated that she was accompanying Guerrero to see his friend named "Joe," and although she was unsure of his last name that it could possibly be "Mesa." One of the individuals who were present in Room 755 during the execution of the search warrant was named Joseph Mesa.

Officers escorted Taitano and Guerrero to the police station for further questioning. Taitano was advised of her <u>Miranda</u> rights, which she waived, and stated, among other things, that the glass pipe found in her bag was used to smoke "ice." Two plates of ice were discovered in her purse. Guerrero was advised of his <u>Miranda</u> rights, which he waived, and stated, among other things, that he knew Joe Mesa for about 10 years and smoked crystal methamphetamine with him since approximately five months ago. Guerrero stated that the ice pipe and two plates

2

of ice found in Taitano's purse belonged to him.

### B. Defendants Were Not Subject to Custodial Interrogation Prior to Their Arrest and Officers Had Reasonable Suspicion to Detain Them

The Fourth Amendment permits law enforcement agents to detain a suspect for investigation if they have reasonable suspicion that he has committed a crime. Terry v. Ohio, 392 U.S. 1 (1968). During a Terry stop, officers are entitled to conduct a brief questioning to establish the identity of the person and to dispel reasonable suspicion of criminal activity. Id, 392 U.S. at 6-7, 22-23. Police officers are entitled to use reasonable force during an investigatory stop, including drawing guns, and handcuffing and frisking, when, in the interest of protecting themselves and the safety of the public, such action is reasonable under the circumstances. See United States v. Hensley, 469 U.S. 221, 235 (1985); United States v. Flippin, 924 F.2d 163, 166 (9th Cir. 1991); United States v. Bautista, 684 F.2d 1286, 1289-90 (9th Cir. 1982)(the use of handcuffs or some other method of restraint does not automatically transform a Terry stop into an arrest).

Officers may take reasonable measures to neutralize a risk of harm and to determine whether a person is armed. Terry, 392 U.S. at 24. "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Id. at 27. The purpose of the limited search is to allow officers to conduct investigations without fear of violence. Adams v. Williams, 407 U.S. 143, 146 (1972).

In this case, the questioning and frisk of defendants did not transform the encounter into an arrest. The questioning about whether they were armed or possessed drugs was a reasonable precuation and not an excessive intrusion, especially when they were approaching a location that was being searched for drug-related activity. It would have been foolhardy for an objectively reasonable officer not to conduct a security frisk under the circumstances in this case in light of the possible danger presented by an individual approaching a location concealing a drug operation. "It is not unreasonable to suspect that a dealer in narcotics might be armed." United

3

States v. Post, 607 F.2d 847, 851 (9th Cir. 1979); United States v. Salas, 879 F.2d 530, 535 (9th Cir. 1989). The officers were entitled to determine if the defendants were carrying a weapon and to neutralize the threat of physical harm. Terry, 397 U.S. at 24. Given the nature of the ongoing investigation, i.e., a tip that individuals were manufacturing methamphetamine in a hotel room and the ongoing search of Room 755 which uncovered a clandestine laboratory, the officers understandably approached the defendants with caution and conducted a pat down frisk to ensure the absence of weapons.

Reasonable suspicion "may ripen into probable cause to arrest through the occurrence of facts or incidents after the stop." United States v. Medina-Gasca, 739 F.2d 1451, 1453 (9th Cir. 1984). While Taitano was lawfully stopped in the hotel lobby and asked about weapons and drugs, the defendant showed the officer the contents of her purse which contained an ice pipe or drug paraphernalia. This gave rise to probable cause to arrest defendant for possession. See United States v. Avon-Meza, 177 F.3d 1130, 1132-33 (9th Cir. 1999)(probable cause for arrest existed when, in response to request for consent to search a bag, the suspect did not answer but unzipped his bag to show the officer the inside, and the officer saw part of a package that, based on her experience, was packaged in a manner consistent with those that typically contain illegal drugs).

In the context of detention during traffic stops, the Supreme Court in Berkemer v. McCarty, 468 U.S. 420, 439 (1984), noted that "exposure to public view both reduces the ability of an unscrupulous policeman to use illegitimate means to elicit self-incriminating statements and diminishes the [detainee's] fear that, if he does not cooperate, he will be subjected to abuse." Id, 468 U.S. at 438.

//
//
//
//

4

No unscrupulous and illegitimate activity occurred on the part of law enforcement officers during the investigation in this case.

Based on the foregoing, the defendants' motions to suppress should be denied.

RESPECTFULLY submitted this 7th day of November 2005.

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and CNMI

By: *(signature)*
MARIVIC P. DAVID
Assistant U.S. Attorney

5